# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| RONALD LINDSEY, | Case No.: 4:15-cv-00502-REB |
| Petitioner, | |
| vs. | **MEMORANDUM DECISION AND ORDER** |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Respondent. | |

Pending is Petitioner Ronald Lindsey's Petition for Review (Dkts. 1, 15),[1] appealing the

Social Security Administration's final decision to deny various claims for awards of additional

benefits.[2] *See generally* Pet. for Review (Dkt. 15). Also pending are two motions filed by

---

[1] Petitioner is proceeding here pro se, as he has apparently done at nearly every stage of seeking Social Security benefits for at least the last 25 years. His initial filing in the above-captioned case was comprised only of a completed Civil Cover Sheet form and a single hand-written page stating, "This form is pertaining to NOTICE OF APPEALS COUNCIL ACTION letter dated 7/29/2015, with no response to my letter 8/26/2015. This is following their procedure of getting a civil action to them before 60 days, as their letter claims to do registered or certified in the mail which is today 10/27/2015. Yours truly, [signature]." (Dkt. 1.)
The Respondent moved to dismiss for lack of service, Docket No. 13, later arguing for dismissal because Petitioner's initial filing fails to state a claim entitling Petitioner to relief, in violation of Federal Rule of Civil Procedure 8. Reply in Supp. of Mot. to Dismiss Pet. for Rev. (Dkt. 18). However, the Respondent acknowledged that Petitioner's filing at Docket No. 15, captioned "Statement," outlines his issues with the SSA decision and could be treated as a Petition for Review. *Id.* The Court agrees, and will treat Docket No. 15 as a Petition for Review for all purposes. *See* FED. R. CIV. P. 8(e) (requiring pleadings to be construed so as to do justice); *see also* FED. R. CIV. P. 1 (stating the Federal Rules of Civil Procedure "should be construed, administered, and employed . . . to secure the just, speedy, and inexpensive determination of every action and proceeding."). Document titles notwithstanding, further references in this decision to a "Petition for Review" refer to Docket No. 15 and not to Docket No. 1.
[2] Nancy A. Berryhill became the acting Commissioner of the Social Security Administration on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted in for Carolyn W. Colvin as the Defendant in this

Petitioner to obtain records from the Office of Workers' Compensation Programs ("OWCP") (Dkt. 30) and the Social Security Administration ("SSA") (Dkt. 31). This action is brought pursuant to 42 U.S.C. §§ 405(g). Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I. FACTUAL BACKGROUND AND ADMINISTRATIVE PROCEEDINGS

This is not a typical Social Security appeal. Rather than disputing a finding of no disability, Petitioner here has been found disabled and has been receiving Social Security Disability Insurance benefits. Most of his challenges relate to calculations of his benefit amounts.

Petitioner was injured on the job in 1983 while working as a federal employee. (AR 67–68, 1362.) He subsequently received periodic payments through OWCP from 1983 through 2013. (AR 1362, 1364, 1379–1380.) Petitioner claims he first filed for Social Security Disability Insurance benefits in 1986, but SSA records do not support this claim. Pet. for Review 9 (Dkt. 15); Addendum to Pet'r's Br. 7–8 (Dkt. 32-1); AR 64 (2005 ALJ Decision) and AR 1361 (2015 ALJ Decision).

The record does show that Petitioner filed a claim for disability insurance benefits in 1990, which was denied initially and then on reconsideration. (AR 64.) There is no evidence Petitioner timely appealed this denial. (AR 64.)

Petitioner next filed for disability insurance benefits in 2000. (AR 64.) That claim was denied on the basis of *res judicata*[3] because it was based on the same facts and law as his 1990 claim. (AR 64.) Again, Petitioner did not appeal the denial.

---

suit. No further action need be taken to continue this suit per the last sentence of 42 U.S.C. § 405(g).

[3] "Res judicata" is a legal principle that "bars litigation in a subsequent action of any claims that were raised or could have been raised in [a] prior action." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001).

In 2002, Petitioner once more applied for disability insurance benefits. (AR 64.) When that application was denied initially and on reconsideration, also on the basis of *res judicata*, Petitioner requested a hearing. (AR 64.) In 2004, Administrative Law Judge ("ALJ") Henry M. Tai vacated the denial of Petitioner's 2002 claim and remanded for further consideration because SSA could not locate the file from Petitioner's 1990 claim and therefore ALJ Tai could not conclude that *res judicata* precluded Petitioner's 2002 claim. (AR 1814–1816.) After the application was once more denied initially and on reconsideration, Petitioner again requested a hearing. (AR 32–34.) After the hearing, ALJ Tai issued a fully favorable decision finding Petitioner had been disabled since May 6, 1983. (AR 64–76.) ALJ Tai also found that Petitioner's 2000 claim could be reopened and revised, because Petitioner had filed his 2002 claim within the four-year period allowed for reopening claims. (AR 74.) However, ALJ Tai also found that Petitioner's 1990 claim, and any earlier claims, could not be reopened because more than four years had lapsed. (AR 74–75.) Ultimately, ALJ Tai found that "[b]ased on the Title II applications filed on October 16, 2002 and protectively filed on April 20, 2000, the claimant is entitled to a period of disability beginning May 6, 1983 and to disability insurance benefits under Sections 216(i) and 223, respectively, of the Social Security Act." (AR 76.) Petitioner did not timely challenge ALJ Tai's 2005 fully favorable decision. (AR 1362.)

Thereafter, Petitioner received a Notice of Award indicating that his disability insurance benefits were being reduced to take into account his Workers' Compensation payments. (AR 81–83.) Petitioner appealed this and other aspects of the Notice of Award, which ultimately resulted in ALJ Tai issuing an unfavorable decision in 2007, finding that Petitioner's disability insurance benefits had been properly calculated and that there was no underpayment of benefits. (AR 1108–1115.) Petitioner appealed to the Appeals Council. (AR 1116–1118.) After a lengthy delay,

in 2010 the Appeals Council granted Petitioner's request for review, vacated the 2007 ALJ decision, and remanded for a new hearing. (AR 1363.)

After a hearing, ALJ Robert J. Labrum issued an unfavorable decision in 2011. (AR 18–24.) The Appeals Council subsequently denied Petitioner's request for review of ALJ Labrum's decision. (AR 14, 10–12.) Thereafter, Petitioner petitioned for review in the United States District Court for the District of Idaho, United States Magistrate Judge Candy W. Dale presiding. (*See* AR 1397–1400; *see also* Case No. 4:13-cv-0439-CWD.) After noting that the Respondent agreed with Petitioner that ALJ Labrum failed to explain adequately the reasons for his decision, the district court granted the petition for review, vacating ALJ Labrum's decision and remanding to the ALJ to develop the factual record further and issue a new decision after analyzing four listed issues. (AR 1401–1408.) The district court also held that there was no legal basis for Petitioner to receive an award of punitive damages against the SSA. (AR 1405.)

On remand, ALJ Michele M. Kelley held a hearing on April 9, 2015 and then issued an unfavorable decision on May 22, 2015. (AR 1361–1382.) Petitioner once again sought review by the Appeals Council, which was once again denied. Thereafter, Petitioner petitioned for review to this Court. (Dkts. 1, 16.)

The Court has worked diligently to understand the particular claims Petitioner now brings. In his Petition for Review, Petitioner sets out five numbered claims. First, he appears to contest the starting date of his benefits, the application of an offset due to his workers' compensation payments, and the treatment of cost-of-living increases. Second, he contends that the calculation to determine his disability insurance award should be based on his 1983 earnings, which were less overall than the 1982 earnings on which SSA relied, but which were higher per month for the months in 1983 he worked before he became disabled. Third, he contends he has

been improperly deprived of Medicare benefits to which he is entitled. Fourth, he contends he has been improperly deprived of family benefits related to his wife and child. Fifth, Petitioner seeks payment of benefits withheld.

In addition to the five numbered issues identified in the Petition for Review, Petitioner elsewhere raises other claims. In particular, he seeks punitive damages against the SSA, Addendum to Pet'r's Br. 15 (Dkt. 32-1), and he claims he is owed $990,000 in back pay from the SSA. Pet'r Br. 8 (Dkt. 32). He also asserts that his original SSA claim was in 1986 and that ALJ Kelley's decision includes typos. Addendum to Pet'r's Br. 7–8, 1 (Dkt. 32-1). Each of these arguments will also be addressed.

## II.  <u>STANDARD OF REVIEW</u>

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. 42 U.S.C. § 405(g); *Trevizo v. Berryhill*, 817 F.3d 664, 674 (9th Cir. 2017). Findings as to any question of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g). In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *See Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).

"Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The standard requires more than a scintilla but less than a preponderance (*Trevizo*, 817 F.3d at 674), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the

conclusions of the ALJ. *Richardson*, 402 U.S. at 401; *see also Ludwig*, 681 F.3d at 1051. The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Treichler*, 775 F.3d at 1098. Where the evidence is susceptible to more than one rational interpretation, the reviewing court must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record. *Ludwig*, 681 F.3d at 1051. In such cases, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Batson v. Comm'r of Social Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015); *Treichler*, 775 F.3d at 1098. Considerable weight must be given to the ALJ's construction of the Social Security Act. *See Vernoff v. Astrue*, 568 F.3d 1102, 1105 (9th Cir. 2009). However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

### III.  <u>DISCUSSION</u>

**A.  Petitioner's Motions to Obtain Additional Records Are Denied.**

Petitioner filed two motions to obtain records he believes are relevant to his case. First, he filed a Motion for Workers Comp Records or an Index of Workers Comp Records (Dkt. 30), "to obtain Federal Workers' Compensation records pertaining to [his] work injury that occurred May 6, 1983 to the present day." His stated purpose behind the motion is "to establish failure for due process and the Social Security negligence for not processing my claim and Social Security negligence for not assisting me with my claim." *Id.*

Separately, he also filed a Motion for Social Security Records and the Triennial Redetermination Ratio Considered Starting 1983 to Present (Dkt. 31). His stated purpose is "to obtain all of Social Security records, respectfully the dates from 1986 to 1992 and 2000 to the present to establish failure for due process and the Social Security negligence in processing my claim and not assisting me with my claim." *Id.*

Respondent opposes both motions (at Dkts. 34, 35), arguing that this Court, in its appellate role, "simply cannot look beyond the record." Resp't's Resp. to Pet'r's Mot. for Workers' Compensation Records or an Index of Workers' Compensation Records 1–2 (Dkt. 34) (quoting *Roberts v. Shalala*, 66 F.3d 179, 183 n.3 (9th Cir. 1995)). Respondent also points out that the issue of agency negligence is not before the Court, quoting Judge Dale's citation to 42 U.S.C. § 405(g) in Petitioner's prior case. *Id.* at 2. Additionally, Respondent characterizes this as a "closed-record, administrative case" where "[t]he record is complete." *Id.* Finally, Respondent observes that the certified administrative record already includes some 175 pages of records ALJ Kelley subpoenaed from OWCP. *Id.* at 3; *see also* AR 912–1087.

Respondent offers parallel arguments in its opposition to Petitioner's other motion. *See* Resp't's Resp. to Pet'r's Mot. for Social Security Records and the Triennial Redetermination Ratio (Dkt. 35).

The motions must be denied, both because this is a closed-record appeal and because the issues to which the motions relate are not properly before this Court. This reasoning is further explained in the next several paragraphs.

Social Security appeals such as this one involve "a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based." 42 U.S.C. § 405(g). The "decision" referred to is the ALJ decision. The "record" consists of all

the evidence that was before the ALJ. Unlike most civil cases filed in United States District Court, Social Security appeals at the District Court do not give the parties an opportunity to subpoena records or present evidence. Nor is this Court authorized to consider new evidence on appeal. It is the obligation of a claimant such as the Petitioner to gather and introduce evidence while, or before, the claim is in front of an ALJ.

The purpose of a Petition for Review is not for the District Court to judge a petitioner's claims as if they were newly brought. Rather, it is to review the ALJ's decision for correctness – which is why the filing initiating a case here is a Petition for *Review*. To prevail on appeal, a Petitioner must show that the ALJ erred in some legally significant way. Merely showing that the ALJ could have decided differently is not enough. Nor is it enough to show that Petitioner's claims have merit or that Petitioner is in some way "right." Instead, it is the Petitioner's burden to show, on the same record the ALJ considered, that the ALJ's decision is materially wrong. In order to preserve the District Court's ability to undertake this analysis, it is essential that the Court consider precisely the same record the ALJ considered. For this reason, Petitioner's motions to obtain information to supplement the administrative record on appeal must be denied.

Additionally, Petitioner's motions seek to acquire new information that Petitioner believes will support his claims that the SSA acted negligently or violated his due process rights. But Respondent is correct that those issues are not properly before the Court. This case arises under 42 U.S.C. § 405(g), which allows only for judicial review of final decisions of the SSA. The only matters to consider in this case are those matters that were before ALJ Kelley when she issued her decision. Those did not include whether the SSA was negligent or had violated Petitioner's constitutional rights, so those issues are not properly before this Court. Accordingly,

Petitioner's motions to obtain information that could support such claims must be denied on this additional ground.

Finally, ALJ Kelley considered and rejected Petitioner's request to subpoena records from OWCP, concluding that the "records are not relevant to any of the issues before her." (AR 1381.) Petitioner's motion regarding OWCP records must be denied even if the Court assumes for the sake of argument that that motion could be regarded as challenging the ALJ's conclusion the records were irrelevant. The motion asks this Court for assistance getting the records, but does not mention ALJ Kelley's decision. Certainly, Petitioner's motion does not argue that ALJ Kelley somehow erred in rejecting Petitioner's request for the records. Accordingly, Petitioner has not shown error in that aspect of ALJ Kelley's decision.

In deciding to deny Petitioner's motions, the Court has considered that it "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). This "new evidence" provision in the law does not allow a court to consider new evidence itself, but it does allow the case to be remanded for further consideration by the SSA in appropriate circumstances. But, by the plain terms of the law, this only applies when the new evidence is "material" and when Petitioner's failure to incorporate it into the record sooner is justified. *Id.*

Here, neither requirement is met. The records Petitioner seeks are not material to any claims properly brought before the Court. Nor has good cause been shown as to why the evidence sought by Petitioner was not previously incorporated into the record. Thus, there is no basis for remanding so SSA can reconsider its decision based on new evidence. As discussed above, Petitioner's motions to obtain additional records are denied.

**B. Petitioner's Petition for Review Is Granted and the Case Is Remanded.**

Petitioner numbered five issues in his Petition for Review. Pet. for Review at 1, 1, 4, 5, 8 (Dkt. 15). He also raised additional issues in his Brief. Addendum to Pet'r's Br. 15 (Dkt. 32-1); Pet'r's Br. 8 (Dkt. 32). Although Respondent frames some of these issues differently, Resp't's Br. 2 (Dkt. 36), the Court will closely follow Petitioner's framing of the issues to give Petitioner the clearest possible understanding of its decision.

1. Petitioner's Benefits Starting Date and Workers' Compensation Offset Are Correct.

In its entirety, the first issue Petitioner raises states:

> Social Security Administration (SSA) Attorney [sic] Law Judge (ALJ) Chief Judge Henry M. Tai
> The Social Security starting date payout is April 20, 1999. My Social Security entitlement of benefits starts May 6, 1983. That means the tally of 1983–1999 is unpayable but the tally 1999 stands and is to be paid out from 1999 with all the ongoing cost of living increases of my Social Security payout without the Workers Comp offset.

Pet. for Review 1 (Dkt. 15).

In his 2005 decision, ALJ Tai found that Petitioner was disabled as of May 6, 1983. (AR 76.) He also found that Petitioner had protectively filed an application for disability insurance benefits on April 20, 2000. (AR 75.) An eligible person may receive disability insurance benefit payments for up to 12 months prior to the date they filed, so long as they would have been entitled to the benefit had they filed sooner. 42 U.S.C. § 423(b), (a)(1); 20 C.F.R. § 404.621(a)(1). Here, Petitioner was found entitled to benefits as of April 20, 1999 – one year before the date of his April 20, 2000 protective filing that established his disability based on ALJ Tai's 2005 decision. *Id.*; AR 75.

By the same law, Petitioner was not entitled to benefits prior to April 20, 1999 because he did not prove he was disabled based on an earlier filing. Even though Petitioner may have filed

in 1986, and did file in 1990, Petitioner did not adequately prove to the SSA that he was disabled until 2005. As ALJ Tai and ALJ Kelley both noted in their decisions, prior filings may only be opened for good cause for a period of four years from the SSA's initial determination. AR 74–75; AR 1376; 20 CFR § 404.988(b). There is simply no way Petitioner could be entitled to benefits any earlier than April of 1999.[4]

Petitioner seems to acknowledge that he is not entitled to disability insurance benefits prior to April 20, 1999 by stating "the tally of 1983–1999 is unpayable." Pet. for Review 1 (Dkt. 15). But if he is somehow claiming he is entitled to disability insurance benefits prior to April 20, 1999, his Petition for Review is denied to that extent. He has not shown that ALJ Kelley (whose decision it is that is before this Court for review) erred in finding that April 1999 was the first month he was entitled to disability insurance benefits. (AR 1376–1377.)

It is not quite accurate for Petitioner to assert that his "Social Security entitlement of benefits starts May 6, 1983." Pet. for Review 1 (Dkt. 15). He was disabled as of that date, but not yet entitled to disability insurance benefits. Under 42 U.S.C. § 423(a)(1), he was not entitled to benefits until he met *all* of the eligibility requirements – including filing an application establishing that he is under a disability. That did not happen until he applied for disability insurance benefits on April 20, 2000. This is consistent with ALJ Tai's 2005 decision, which stated that Petitioner "is entitled to a period of disability beginning May 6, 1983 and to disability insurance benefits under Sections 216(i) and 223." (AR 76.) ALJ Tai noted that Petitioner's *disability* began in 1983 but that his *entitlement to benefits* would begin as provided by statute.

---

[4] There are circumstances where an application can be reopened beyond the four-year limitation, but none of those circumstances is present here. *See* 20 C.F.R. § 404.988(c).

**MEMORANDUM DECISION AND ORDER – 11**

ALJ Kelley affirmed, and this Court now affirms, that Petitioner's disability insurance *benefits* properly began in April 1999.

The remaining portion of Petitioner's first issue states that he "is to be paid out from 1999 with all the ongoing cost of living increases of my Social Security payout without the workers comp offset." Pet. for Review 1 (Dkt. 15). The record reflects that Petitioner's benefits calculations have included cost of living increases. (AR 125–126; *see also* AR 1453.) Petitioner's filings do not indicate why he believes he is not receiving cost of living adjustments to his disability insurance benefits to which he is entitled. In the absence of argument or explanation on the issue of cost of living adjustments, and in the presence of record evidence indicating they have been included, the Court finds no reason to overturn ALJ Kelley's decision on that basis.

Nor does Petitioner offer argument or explanation why he thinks his disability insurance benefits should not have been reduced while he was receiving workers' compensation payments. ALJ Kelley quoted section 224(a) of the Social Security Act, 42 U.S.C. § 424a, which provides that disability insurance benefits awards must be reduced when the recipient also receives disability-related periodic benefits for workers' compensation. (AR 1378.) ALJ Kelley's decision is detailed and thorough, describing the history and purpose of this reduction as well as the mechanics of how it is applied in practice. (AR 1378–1379.) The decision then discusses how the law applies in Petitioner's case, giving dates and dollar amounts as appropriate. (AR 1379–1380.) Except for Petitioner's claim that his benefits calculations should have been based in part on his 1983 earnings, an issue which is handled later in this Memorandum Decision and Order, Petitioner does not challenge any aspect of ALJ Kelley's findings regarding the application of

the workers' compensation offset. Accordingly, the Court will not overturn ALJ Kelley's finding that the offset applies.

 2. <u>Petitioner's Benefits Were Properly Calculated Excluding His 1983 Earnings.</u>

Petitioner's cornerstone contention is that his benefits calculations should have included his earnings from 1983. Pet. for Review 1–4 (Dkt. 15); Addendum to Pet'r's Br. 2–4 (Dkt. 32-1). More specifically, the issue is whether SSA properly calculated Petitioner's "average current earnings" for purposes of offsetting his workers' compensation payments. 42 U.S.C. § 424a(a)(5).

As discussed above, section 224 of the Social Security Act, 42 U.S.C. § 424a, requires reduction of a person's disability insurance benefits when they also receive periodic workers' compensation payments. The statute provides the method for calculating the reduction. As applicable here,[5] Petitioner's disability insurance benefits are reduced (even, potentially, to zero) by the dollar amount calculated when subtracting 80% of Petitioner's "average current earnings" from the sum of his disability insurance benefit amount and his workers' compensation amount. 42 U.S.C. § 424a(a)(2)–(5). Seen another way, an individual's "average current earnings" establish a cap on the monthly benefits an individual can receive. The higher the "average current earnings," the higher the cap will be. Thus, the amount of the reduction turns on how Petitioner's "average current earnings" under § 424a(a)(5) are determined.

The statute answers that question:

For purposes of clause (5), an individual's average current earnings means the largest of

_____

[5] To simplify this description, supplemental security income benefits to which an individual is entitled under section 202 of the Social Security Act, 42 U.S.C. § 402, are excluded here because Petitioner is not entitled to such benefits. Omitting reference to such benefits does not change the analysis or application in Petitioner's case.

(A) the average monthly wage (determined under section 415(b) of this title as in effect prior to January 1979) used for purposes of computing his benefits under section 423 of this title,
(B) one-sixtieth of the total of his wages and self-employment income (computed without regard to the limitations specified in sections 409(a)(1) and 411(b)(1) of this title) for the five consecutive calendar years after 1950 for which such wages and self-employment income were highest, or
(C) one-twelfth of the total of his wages and self-employment income (computed without regard to the limitations specified in sections 409(a)(1) and 411(b)(1) of this title) for the calendar year in which he had the highest such wages and income during the period consisting of the calendar year in which he became disabled (as defined in section 423(d) of this title) and the five years preceding that year.

42 U.S.C. § 424a(a) (spacing added for clarity); *see also* 20 C.F.R. § 404.408.

The SSA ruled that option (C) yielded the largest number, using his wages from 1982 to establish average current earnings of $1,957 per month. (AR 143–146.) ALJ Kelley affirmed this finding. (AR 1380.)

Petitioner takes issue both with the selection of option (C) and with the reliance on 1982 as the calendar year in which he had the highest wages. Pet. for Review 1–4 (Dkt. 15); Addendum to Pet'r's Br. 2–4 (Dkt. 32-1). He argues that in selecting option (C), ALJ Kelley failed to discuss the values calculated under options (A) and (B). *Id.* He also asserts that even if option (C) is applied, the calculation should be based on his 1983 earnings, not 1982, because his per-month earnings in 1983 were higher than his per-month earnings in 1982 – even though his total earnings in 1983 were lower than his total earnings in 1982. *Id.*

The second of these arguments will be addressed first. Option (C) under § 424a(a) plainly requires considering "the *calendar year* in which he had the highest . . . wages and income." (emphasis added.) The record reflects, and Petitioner does not dispute, that his earnings in calendar year 1982 were $23,485.84. (AR 104; Pet. for Review 3 (Dkt. 15).) His earnings in calendar year 1983 were $10,021.01. (AR 104; Pet. for Review 3 (Dkt. 15).) Petitioner contends

that his 1982 earnings spanned all 12 months of the year, while his 1983 earnings spanned only January through April (because he was injured in early May, 1983). Pet. for Review 4 (Dkt. 15). Thus, he argues, his per-month earnings in 1983 were substantially greater than his per-month earnings in 1982. *Id.* Indeed, Petitioner's math is correct: in 1982 his earnings were less than $2,000 per month, while in the four months he worked in 1983 they were approximately $2,500 per month.

But Petitioner overlooks that option (C) under § 424a(a) does not allow for calculating earnings on a per-month basis. Instead, as described above, it requires consideration of "the calendar year in which he had the highest . . . wages." Petitioner's actual earnings in calendar year 1983 were less than his earnings in calendar year 1982. It is irrelevant that his *rate* of earnings was higher during the months he worked in 1983. There is no basis to consider his monthly earnings rate when evaluating option (C) – indeed, had ALJ Kelley done so, she would have erred. ALJ Kelley correctly ruled that "[i]n sum, the ACE calculation must use the 'single highest calendar year' – in this case 1982. Contrary to the claimant's argument, the calculation cannot use a partial calendar year with the highest average monthly earnings. Thus, his argument is without merit." (AR 1380.)

Petitioner also takes issue with ALJ Kelley's not having discussed options (A) or (B) under § 424a(a). Pet. for Review 2–3 (Dkt. 15); Addendum to Pet'r's Br. 2–3 (Dkt. 32-1). It is not clear that Petitioner properly raised this precise issue before ALJ Kelley. If he did not properly raise the issue, he may be barred from raising it now on appeal. *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999). Nonetheless, the Court will regard Petitioner's challenge at the hearing level as regarding the SSA determination of his average current earnings rather than the more narrow issue of whether SSA used the correct year when applying option (C) of § 424a(a).

Even so, the result is the same – Petitioner cannot prevail on this issue. First, he fails to show how he was harmed by ALJ Kelley's failure to devote more attention to options (A) or (B). He argues that "I have an option A, B that I can use or an option C that I can use." Addendum to Pet'r's Br. 3 (Dkt. 32-1). But he offers no calculations of his own, nor any evidence that the result would be different if either option (A) or option (B) was relied on instead of option (C). It is the Petitioner's burden to show how he was harmed by an error of the ALJ, and he cannot prevail because he did not do that.

Second, on these facts he could not show harm. ALJ Kelley properly relied on option (C) because the calculations under option (C) yielded the largest number. Option (A) considers the "average monthly wage" used for purposes of computing disability insurance benefits. This value is determined by performing the calculation specified in 42 U.S.C. § 415(b) as it was in effect prior to January 1979. *See also* 20 C.F.R. § 404.221. Respondent argues that ALJ Kelley provided these calculations to Petitioner in her decision, arriving at an average monthly wage of $1,304.00. Resp't's Br. 9 (Dkt. 36) (citing AR 1375).

ALJ Kelley described in painstaking detail how Petitioner's disability insurance benefits were calculated, first explaining the applicable law and regulations and then applying them in Petitioner's circumstances. (AR 1371–1376.) The specific computation undertaken by ALJ Kelley is referred to, correctly, as the "Adjusted Indexed Monthly Earnings" ("AIME"). (AR 1372.) But the clause at issue in § 424a(a) option (A) refers to "average monthly wage" and not "average indexed monthly earnings." More completely, option (A) is "the average monthly wage (determined under section 415(b) of this title as in effect prior to January 1979) used for purposes of computing his benefits under section 423 of this title." It appears from the record that the lengthy explanation and calculation ALJ Kelley provided was the computation of

benefits under § 423. It is not clear from the record whether this calculation is identical to the "average monthly wage (determined under section 415(b) of this title as in effect prior to January 1979)" required by § 424a(a). Regardless, it was Petitioner's burden to show that the calculation under option (A) would be higher than the calculation under option (C), on which ALJ Kelley relied. Petitioner has not done this.

Option (B) considers one-sixtieth of the individual's total earnings for the five consecutive calendar years when his earnings were highest.[6] Here, the record shows, and Petitioner does not dispute, that Petitioner's earnings history is as follows:

| | |
|---|---|
| 1975 | $956.88 |
| 1976 | $7,816.47 |
| 1977 | $7,588.68 |
| 1978 | $9,095.05 |
| 1979 | $8,287.24 |
| 1980 | $7,151.39 |
| 1981 | $15,575.04 |
| 1982 | $23,485.84 |
| 1983 | $10,021.01 |

(AR 1256; *see also* Addendum to Pet'r's Br. 34 (Dkt. 32-1).) It is readily apparent that the consecutive five-year period with the highest earnings was 1979–1983. All told, Petitioner's earnings during that period were $64,520.52. One-sixtieth of that number is $1,075.34. Thus, Petitioner's average current earnings calculated under option (B) of § 424a(a) were $1,075.34.

Putting these analyses together, Petitioner's average current earnings calculated under option (A) were $1,304.00,[7] calculated under option (B) were $1,075.34, and calculated under

---

[6] Respondent contends that this option considers only "wages from self-employment." Resp't's Br. 9 (Dkt. 36). This is incorrect. As in option (C), option (B) considers "the total of his wages *and* self-employment income." 42 U.S.C. § 424a(a) (emphasis added).

[7] Again, even if the precise computation undertaken by ALJ Kelley was not the proper one for purposes of § 424a(a), Petitioner has failed to argue what the correct computation would be.

option (C) were $1,957.00. Because option (C) presents the highest number, it was not error for

ALJ Kelley to rely on that option. Nor was it reversible error for ALJ Kelley to omit a reference

to option (A) or an analysis of option (B). Because her decision correctly relied on option (C),

Petitioner was not harmed even if there arguably could have been a more extensive analysis of

the alternative options. ALJ Kelley's decision is not subject to reversal on the basis that

Petitioner's workers' compensation offset was miscalculated.

    3.   This Is Not a Proper Forum to Consider Petitioner's Medicare-Related Claims.

In his Petition for Review, Petitioner asserts that "Judge Tai's written decision states my

Social Security entitlement benefits starts [sic] in 1983. That means the Medicare starts at that

date and his decision has been finalized." Pet. for Review 4 (Dkt. 15). Petitioner also brings up

Medicare in the addendum to his brief, but it is not clear what his precise grievance is.

Addendum to Pet'r's Br. 9 (Dkt. 32-1). He asserts that the dates on his Medicare card are

incorrect and inconsistent with ALJ Tai's 2005 decision. *Id.* But in the briefing on the present

appeal, he does not articulate how the dates are wrong or, more importantly, how he is harmed

by the allegedly-incorrect dates. In the past, he has challenged the propriety of being charged for

Medicare Part B coverage in September 2005 when he did not receive his Medicare card until

October 2005. (*See* AR 1367.) As ALJ Kelley explained, Petitioner "likely was required to pay

the premium for September 2005, because that was when his Medicare coverage began. Even if

he did not have a Medicare card in hand, any eligible medical treatment (doctor visits) the

claimant incurred in September 2005 would have been covered by Medicare Part B." *Id.* This is

consistent with the 2007 decision by ALJ Tai that explained why Medicare premiums were

withheld for September 2005. (AR 1114.) Regardless, it is not clear what Medicare-related claim

Petitioner is asserting here. For that reason on its own, his petition must be denied as to this issue.

ALJ Kelley's decision indicates that on remand from Petitioner's prior appeal to the U.S. District Court, she was obligated to consider both "whether Petitioner was erroneously charged for Part B Medicare premiums for September 2005" and "whether petitioner's spouse and child are entitled to Social Security benefits or Medicare coverage." (AR 1365.) In both cases, she was also obligated to "include[e] consideration of Social Security's jurisdiction over Medicare issues." *Id.* ALJ Kelley concluded that a Social Security Administration ALJ does not have jurisdiction over Medicare issues. *Id.* Nonetheless, ALJ Kelley discussed some history and background of Medicare appeals. (AR 1365–1367.)

The Court will not review those aspects of ALJ Kelley's decision regarding Medicare beyond her conclusion that she lacked jurisdiction to consider Medicare issues. This is because those aspects of the decision touching on Medicare are unofficial advisory statements, offered presumably in an attempt to be helpful to Petitioner. Indeed, she stated that "after some research, the undersigned will try to explain some of the law affecting the claimant's Medicare coverage, *but will make no findings regarding such*." (AR 1366 (emphasis added).)

Petitioner does not challenge ALJ Kelley's finding that she lacked jurisdiction to consider issues related to Medicare. Respondent, on the other hand, offers several citations to legal authority supporting ALJ Kelley's conclusion that Medicare issues are not handled by the Social Security Administration:

> *[S]ee* Medicare Prescription Drug, Improvement, and Modernization Act of 2003, P.L. 108-17[3] § 931 [117 Stat 2066]; *see also* 42 U.S.C. § 1395ff; *Moller v. CMS-Centers for Medicare & Medicaid Servs.*, 959 F. Supp. 2d 1031, 1034 (E.D. Mich. 2013) ("the exclusive method for obtaining judicial review of Medicare Part B benefits claims . . . is by following the administrative procedures detailed in the Medicare Act").

Resp't's Br. 3–4 (Dkt. 36). Petitioner does not dispute Respondent's argument in this regard. *See* Pet'r's Resp. to Resp't's Br. (Dkt. 37).

The Court concurs with ALJ Kelley's assessment of the jurisdictional lines. The Social Security Administration lacks jurisdiction to hear Medicare issues. *See* 42 U.S.C. § 1395ff. Further, Medicare issues cannot be raised in a judicial proceeding like this one until the Department of Health and Human Services – not the Social Security Administration – has first had an opportunity to resolve them. 42 U.S.C. § 1395ff(b)(2)(C)(i). Because the record does not show that Petitioner has ever raised his Medicare issues with the Department of Health and Human Services, judicial review of any such issues is unavailable. Petitioner's Petition for Review is denied to the extent it seeks review of any Medicare-related issues. If Petitioner believes he has a legitimate grievance with respect to Medicare, he should contact the Department of Health and Human Services – not the Social Security Administration or this Court.

4.  Remand Is Necessary to Evaluate the Entitlement Date of Petitioner's Wife.

Next, Petitioner challenges the SSA's determination that his wife and child were entitled to benefits based on their own filing dates rather than on Petitioner's filing date or the date Petitioner first informally sought benefits for them. Pet. for Review 5–8 (Dkt. 15); Addendum to Pet'r's Br. 4–7 (Dkt. 32-1). Petitioner acknowledges that "ALJ Kelley is dismissing my family benefits appeal basically on not filing a timely application." Pet. for Review 5 (Dkt. 15). ALJ Kelley devoted several pages of her decision to address the facts and law relevant to Petitioner's family benefits. (AR 1367–1371.)

The wife and children of a recipient of disability insurance benefits are themselves entitled to benefits by virtue of the recipient's entitlement to benefits, so long as they meet

certain requirements. 42 U.S.C. § 402(b)(1), (d)(1). One requirement is that each beneficiary must file an application for the insurance benefits. 42 U.S.C. § 402(b)(1)(A), (d)(1)(A).

There is no dispute that Petitioner's wife and child were entitled to and did receive insurance benefits under § 402. (AR 1368.) The only dispute is as to the date each person should have begun to receive benefits (and, therefore, as to the amount the SSA has paid to each). *Id.*; Pet. for Review 5–8 (Dkt. 15).

Petitioner argues that ALJ Tai's 2005 decision acknowledges the existence of his wife and child, so their entitlement date should be the same as his own. Addendum to Pet'r's Br. 6 (Dkt. 32-1). He also argues that his appeal letter to the SSA, dated October 20, 2005 (AR 89–96), in which he specifically asked how to get benefits for his wife and child, should establish their entitlement to benefits. Pet. for Review 8 (Dkt. 15). The entitlement dates for each person will be considered separately.

> *a.   The Entitlement Date for Petitioner's Child is Correct.*

Petitioner applied for child insurance benefits on his child's behalf on May 7, 2007 (AR 1473–1478), but the SSA found the child to be entitled to benefits beginning May 2000 (AR 1460; AR 1483–1486). Petitioner argued before ALJ Kelley that insurance benefits for both his wife and his child should have begun in April 1999, the same month his own entitlements began. (AR 1370.) Nonetheless, ALJ Kelley found that the child's entitlement to child insurance benefits did not begin on Petitioner's entitlement date because on that date Petitioner was not married to the child's mother and had not acknowledged in writing that the child was his. (AR 1370–1371.) She rejected Petitioner's contention that Petitioner entered a common law marriage prior to his official marriage in March 2003. In part, ALJ Kelley relied upon applications

prepared by the Petitioner in 2000 and 2002 in which he said he had never been married. (AR 1369, citing AR 1641 and AR 1651.)

Instead, ALJ Kelley found that Petitioner's child properly began receiving benefits in May 2000, based on Petitioner's written acknowledgment that he had a child, made in his own SSA application dated that month. (AR 1369, citing AR 1641.)

Petitioner wants his family benefits to begin on his own entitlement date of April 1999:

> I believe my family payout should start that date. If not it should be shortly after that date because I presented myself and my family several times on getting answers and I got stonewalled by these very Social Security people and now have ALJ Kelley saying I and my family failed to file an application earlier. If ALJ Kelley is correct in her findings then Social Security kept me in limbo on cheating me and my family out of benefits once again as the records will prove.

Addendum to Pet'r's Br. 6 (Dkt. 32-1).

A person must file an application to become entitled to receive family benefits. 42 U.S.C. § 402(b)(1)(A), (d)(1)(A). An application is not valid unless it is on a prescribed application form and signed by a proper applicant. 20 C.F.R. § 416.310. Neither the SSA nor this Court can ignore these mandatory requirements. Among other reasons, filing an application enables the SSA to make a formal determination of eligibility and gives the applicant the right to appeal unfavorable determinations. *See* 20 C.F.R. § 404.603(a).

Petitioner's May 2000 application names his child and asserts that the child may be eligible for benefits. (AR 1641.) This established a protective filing for the child. POMS GN 00204.010(C)(3). Child's insurance benefits, like disability insurance benefits, may be received for up to 12 months immediately before the filing date, so long as the applicant meets all requirements for entitlement except for filing. 20 C.F.R. § 404.621(a)(1). Per 20 C.F.R. § 404.352(a)(2), Petitioner's child's entitlement begins "the first month covered by your application throughout which you meet all other requirements for entitlement." Here, ALJ Kelley

found, as had the SSA previously, that because Petitioner was not married when he applied in 2000, his child was not entitled to benefits until Petitioner acknowledged his paternity in writing. (AR 1370 (quoting 20 C.F.R. § 404.355(a)(3)).) In short, Petitioner's child was not entitled to benefits before May 2000 because Petitioner was not married to the child's mother at that time and Petitioner did not acknowledge his paternity of the child in writing until that month. Petitioner's child is not entitled to retroactive benefits because Petitioner's application serves as the writing establishing paternity.

Petitioner's only argument on any of these points relates to the date of his marriage to his child's mother. Petitioner states that in 2000 he was the "head of household and financially providing for my son and his mom, which we had been living together as a couple." Pet. for Review 5–6 (Dkt. 15). He later quotes part of the SSA definition of "wife" as "the wife of an individual but only if she (1) is the mother of his son or daughter." *Id.* at 7 (quoting 42 U.S.C. § 416(b)). Then he notes that ALJ Tai's 2005 decision mentioned Petitioner's "wife." *Id.* (quoting AR 65, 72, 76). Petitioner concludes that these facts together show "my wife and son's benefits are established by Judge Tai's decision and Social Security Act Title II 216(b) the term 'wife' as under Section (1) is the mother of his son or daughter and we as us 3 have always lived together since the birth of my son." *Id.*

Petitioner later renews the arguments he presented to ALJ Kelley regarding his assertion he was in a common law marriage. Addendum to Pet'r's Br. 6–7 (Dkt. 32-1). He offers to acquire "an affidavit of my mother-in-law acknowledging the first mentioning of me and my wife's union together of living together prior to my marriage license." *Id.* at 7.

None of this argument or evidence calls into question ALJ Kelley's finding that Petitioner was not married until he obtained a marriage license in 2003. Filing taxes as head of

household does not prove a marriage. Nor does financially providing for another person, even the parent of one's child. Similarly, it does not suffice under the SSA definition of "wife" to show merely that a person is the mother of one's son or daughter. Petitioner quotes, but gives no significance to, a key part of the definition: "the *wife* of an individual, but only if she (1) is the mother of his son or daughter." 42 U.S.C. § 416(b) (emphasis added). A child's mother is not a wife, under the SSA definition, unless she is married to the individual. Further, it is irrelevant that in 2005 ALJ Tai referred to Petitioner's child's mother as his wife because that decision was issued after Petitioner and his wife formally married and received a marriage license. By that time, she was indeed his wife in the eyes of the law. ALJ Tai's decision did not address when the Petitioner was married, and his decision made no findings on the critical issues described here. (*See* AR 64–76.) Finally, living together as a family does not prove that Petitioner was married.

Petitioner suggests he could introduce an affidavit documenting when he first began living with his wife. Addendum to Pet'r's Br. 7 (Dkt. 32-1). Because no such affidavit is presently before the Court, it will not be considered. Further, an affidavit in the form described does not change this Court's assessment of the reasons for ALJ Kelley's decision and the soundness of her ruling on this question. Among other things, Petitioner's own representations in 2000 and 2002 that he was not married provide substantial evidence upon which ALJ Kelley was entitled to rely.

ALJ Kelley's decision that Petitioner was not married in May 2000 when he applied for disability insurance benefits is not subject to being overturned on this record. Accordingly, any entitlement on the part of Petitioner's child to child insurance benefits could not begin until he acknowledged paternity in his May 2000 application. The entitlement, therefore, properly began at that time.

*b. The Entitlement Date for Petitioner's Wife May Be Incorrect.*

Petitioner's wife applied for wife insurance benefits on May 7, 2007 and she was found

entitled to monthly wife benefits beginning one year earlier, in May 2006. (AR 1368–1370,

1467–1472.)  Petitioner argues that his wife applied for wife insurance benefits prior to May 7,

2007, and he contends that he properly raised the issue in a letter he wrote to the SSA dated

October 20, 2005. Pet. for Review 8 (Dkt. 15). In the letter, he stated:

> If, my wife and son are not included then I need to know why not, in laymans
> terms, in writing. If they are, then why are they not mentioned. I also need to
> know if they will receive a medicare plan and benefits of family coverage as
> stated in the Social Security brochures.
>      I received a letter . . . date[d] 9-25 [that] is . . . [a] Notice of Award. This
> letter . . . does not address my family, nor their medicare. We have the Social
> Security brochures that state that they are to be included with my benefits. . . .
> That should include my family as well.
> . . . .
> . . . I need to know if you are suppose to help me access my benefits.

(AR 178–182.) Petitioner signed the letter. (AR 182.) The letter is stamped as received by the

SSA on October 21, 2005. (AR 175.) Included with the letter is a "List for Appeal Requested

Explanations to Award Letter" that purports to highlight the specific issues regarding which

Petitioner sought more information. (AR 183.) Item number two on the list is "Family and family

benefits." *Id.*

Petitioner contends that in the subsequent Notice of Reconsideration letters he received

on October 28, 2006 and November 5, 2006, there was no mention of family benefits despite his

having raised the issue in his prior letter. Pet. for Review 8 (Dkt. 15).

The record includes Notices of Reconsideration the SSA sent Petitioner on October 28,

2006 (AR 136–138), November 1, 2006 (AR 139–142), and November 5, 2006 (AR 143–146).

However, all three letters refer to a request Petitioner sent the SSA on September 22, 2006,

which is apparently not in the record. None of the letters from the SSA reference family benefits.

(*See* AR 136–146.) The SSA sent Petitioner various other correspondence in 2005 and 2006 (AR 119, 120, 125–126, 127), but none of this correspondence refers to family benefits. Nor does any of the correspondence the SSA sent Petitioner in 2005 or 2006 that is in the record reference Petitioner's letter of October 21, 2005. For his part, Petitioner states that

> ALJ Kelley is not acknowledging in her findings my first appeal to Commissioner of Social Security 10/20/2005 on my Award Letter of 9/25/2005 pertaining to my family benefits. This appeal had 5 issues . . . and on the ninth page under List of Appeals 2. Family and family benefits. This Appeal letter to the Commissioner was never answered.
> . . . .
> . . . . Social Security kept my appeal in limbo for 10 years on the 5 issues that were presented to them.

Addendum to Pet'r's Br. 4, 14 (Dkt. 32-1).

The Court has considered carefully whether Petitioner's October 20, 2005 letter (AR 175–183) might have established a protective filing date for his wife's application.[8] While the Court cannot conclude on this record that the letter did in fact establish a protective filing date, the case is remanded for the SSA to consider this issue, after further developing the record if necessary. The record reflects that Petitioner did brief this issue to ALJ Kelley. (AR 1559.) The issue was also discussed at an evidentiary hearing ALJ Kelley held prior to issuing her decision. (AR 1856–1862.) Perhaps understandably, given the panoply of issues raised by Petitioner, this particular issue was not addressed in her decision. (*See* AR 1361–1382.)

SSA regulations allow the use of the date of a written statement that is not an application as the filing date for a subsequent application in certain circumstances:

> If a written statement, such as a letter, indicating your intent to claim benefits either for yourself or for another person is filed with us under the rules stated in

---

[8] The Court has not considered the related issue of whether the letter established a protective filing date for his child's application, because his child's application has already been deemed to have been filed in 2000, several years earlier. Petitioner would not benefit from having the letter construed to establish a protective filing date for his child's application.

§ 404.614, we will use the filing date of the written statement as the filing date of the application, if all of the following requirements are met:

> (a) The statement indicates an intent to claim benefits.
> (b) The statement is signed by the claimant [or] the claimant's spouse . . .
> (c) The claimant files an application with us on an application form as described in § 404.611, or one is filed for the claimant by a person described in § 404.612, within 6 months after the date of a notice we will send advising of the need to file an application. We will send the notice to the claimant. . .
> (d) The claimant is alive when the application is filed . . .

20 C.F.R. § 404.630. The "rules stated in § 404.614" referenced in this regulation do not prescribe any particular requirements for a written statement or letter; they merely require the SSA to treat the filing date as "the day it is received by an SSA employee at one of our offices." 20 C.F.R. § 404.614. Petitioner's letter was stamped "HONOLULU HAWAII 96850 October 21 2005 SSA District Office 91990." (AR 175.) Thus, it appears the letter was received by the SSA – which may be self-evident because the letter is in the record.

Two of the § 404.630 requirements are easily shown. The last page of Petitioner's 2005 letter carries Petitioner's signature. Petitioner was alive in 2007 when his wife ultimately filed a proper application. Thus, Petitioner has strong arguments that the requirements in § 404.630(b) and (d) are satisfied.

The next issue is whether the "statement indicates an intent to claim benefits," as required under § 404.630(a). SSA guidance in the form of Program Operations Manual System (POMS) documents is helpful in this regard. So long as the other requirements are met, "[a] letter asking about benefit rights" suffices as a document to serve as a protective writing. POMS GN 00204.010F.1. One such requirement is that the written statement must establish an intent to file. POMS GN 00204.010B.1. "The expression of intent need not be on a specific form, or in a particular format. . . . If intent to file is not clearly expressed, evaluate the facts in the writing to determine if intent can be reasonably inferred. When in doubt and intent can be reasonably

inferred, assume intent to file." *Id.* The Court concludes that, had ALJ Kelley considered Petitioner's 2005 letter, she may have found that it established an intent to file.

The harder question is whether 20 C.F.R. § 404.630(c) is satisfied. In relevant part, that subsection requires that "[t]he claimant files an application . . . within 6 months after the date of a notice we will send advising of the need to file an application." It also states that "[w]e will send the notice to the claimant." *Id.*

Petitioner's letter was written and received by the SSA in October 2005. Petitioner's wife's application was not filed until May 2007 – far longer than 6 months later. However, the 6-month period begins to run not from the date of the letter, but rather from the date the SSA sent Petitioner's wife a notice advising her of the need to file an application. The record is silent on whether, or when, the SSA ever sent such a notice. The regulations are silent on the impact of the SSA's failure, if indeed there was a failure, to send such a notice. Accordingly, remanding so the SSA can evaluate whether Petitioner's October 2005 letter established a protective filing date for his wife's claim is necessary.

To be clear, the Court has not concluded that Petitioner's wife's filing date must be regarded as October 2005. Rather, the SSA is ordered to evaluate the precise question of whether that letter established a protective filing date that remained effective when Petitioner's wife filed her application in May 2007. The SSA might find that October 2005 is the proper filing date for Petitioner's wife's application, it might find that for one or more reasons that is not the proper filing date, or it might find some impediment to considering the issue.[9]

_____

[9] Petitioner testified during the evidentiary hearing that his wife had her own appeal pending with the SSA. (AR 1859–1860.) He also noted the same in his briefing. Addendum to Pet'r's Br. 7 (Dkt. 32-1). The record does not disclose the status or outcome of that appeal. This Court expresses no opinion on whether the SSA on remand has jurisdiction to consider whether

5. <u>Petitioner Has Not Shown that Any Benefits Were Improperly Withheld.</u>

On another front, Petitioner appears to argue that inflation adjustments to his disability insurance benefits should be calculated as of 1983, when he became disabled, and not as of 1999, when he became entitled to disability insurance. He asserts:

> Social Security is able to award payment of benefits witheld [sic] to effectuate ALJ Tai's fully favorable decision of June 31, 2005, for entitlement to a period of disability and disability benefits. This could be housed with the required Triennial Redetermination to protect the Workers Comp offset from the inflation, that I was receiving in 1983. This is found in Social Security POMS DI 521[]50.080 and Social Security POMS DI 52150.020.

Pet. for Review 8 (Dkt. 15). Further, he states "the calculation for Social Security benefits and Workers Comp benefits must be considered at the 1983 onset for period of disability and to protect those Workers Compensation payments from inflation over the lengthy period of disability from 1983 ongoing to this present day." *Id.* at 9. He offers no reasoning or explanation to support this assertion.

Whether Petitioner raised the issue of triennial redetermination of his average current earnings before ALJ Kelley is unclear. To the extent this is a new issue raised for the first time on appeal before this Court, it is denied. To the extent this issue is merely a reiteration of his broader contention that his benefits have been miscalculated or that he was entitled to benefits as of 1983 instead of 1999, it is denied on the basis that he has not offered enough evidence or argument to show that ALJ Kelley erred in her decision.

Nonetheless, the Court will evaluate Petitioner's precise assertions to the extent it can. As an initial matter, it bears repeating that ALJ Tai's 2005 decision did not say that Petitioner was

---

Petitioner's wife's entitlement date is correct. Nor does the Court consider any issues related to the merits or timing of that appeal, except as discussed in this section regarding the filing date of Petitioner's wife's application.

entitled to disability insurance benefits starting in 1983. The 2005 decision found Petitioner *disabled* in 1983, but it did not find him entitled to benefits as of 1983. Because Petitioner did not adequately prove his disability to the SSA until 2005, his benefits did not begin until 1999 – one year prior to his reopened 2000 application. Under federal law and SSA regulations, ALJ Tai could not have authorized disability insurance benefits to Petitioner any earlier than 1999.

Petitioner is correct that the triennial redetermination of average current earnings is "protection against inflation." POMS DI 52150.080. But he is mistaken that the redeterminations in his case should have started in 1983. "Redet[ermination] years are determined by the first year that benefits are actually reduced due to [workers' compensation] offset." POMS DI 52150.080B.1. Petitioner was not entitled to benefits until 1999. His benefits were first reduced in 1999. Thus, 1999 was the earliest year that a triennial redetermination could properly be applied.

Although Petitioner also cites DI 52150.020, related to "Workers' Compensation/Public Disability Benefit (WC/PDB) Offset First-Considered (OFC) Date and Offset Effective Date (OED)," he does not explain how he thinks it is relevant. The Court notes that, in context, "offset" refers to the reduction in his disability insurance benefits due to his receipt of workers' compensation benefits, while "onset" refers to the date of his disability in May of 1983. Beyond this, the Court will not speculate why Petitioner thinks this policy document is relevant.

As noted above, Petitioner has offered no basis for reversing ALJ Kelley's decision with respect to the calculation of his disability insurance benefits.

6. Petitioner Is Not Entitled to Punitive Damages against the SSA.

Petitioner seeks punitive damages against the SSA. Addendum to Pet'r's Br. 15 (Dkt. 32-1). Petitioner has sought punitive damages repeatedly since at least 2005. (AR 86–87 (Pet'r's

letter to ALJ Tai dated October 28, 2005), 318 (Pet'r's letter to Office of Disability Adjudication and Review (ODAR) dated July 30, 2007), 1167 (Pet'r's letter to ODAR dated January 21, 2011).) Each time, he has been told that punitive damages are not available under the law. (AR 1114 (Decision by ALJ Tai dated December 27, 2007), 21 (Decision by ALJ Labrum dated May 20, 2011).) ALJ Labrum's decision even explained how Petitioner could pursue a negligence claim if he so desired, which Petitioner apparently ignored. (AR 21.) Most recently, Judge Dale's Order dated November 24, 2014 stated as follows:

> The Court will, however, determine the issue of punitive damages. On appeal, Petitioner challenges the SSA's negligence in handling his claim as a collateral issue. Petitioner cannot seek damages pursuant to 42 U.S.C. § 405(g). This section authorizes suits challenging final decisions by the Commissioner of Social Security. 42 U.S.C. § 405(g); *see Califano v. Sanders*, 430 U.S. 99, 108 (1977). But, a request for damages, including punitive damages, is not a request for review of an agency decision; therefore, this Court does not have jurisdiction to determine the issue in this context. *Ostroff v. State of Fla., Dept. of Health & Rehabilitative Servs.*, 554 F.Supp.347, 352 (D.Ct. Fla. 1983) (explaining that, under Section 405(g), petitioner is entitled only to back payment of benefits wrongfully withheld, not general or punitive damages). The Court, and by extension the SSA, lacks jurisdiction over Petitioner's claim for negligence and an award of punitive damages brought as part of this appeal under Section 405(g).

(AR 1405.) Judgment was entered in that case. (AR 1408.) Petitioner did not timely appeal Judge Dale's Order. Therefore, issues resolved in that Order are fully and finally resolved and Petitioner cannot now challenge them. For this reason, his request for punitive damages must be denied.[10]

---

[10] Even if Judge Dale's Order did not bar Petitioner's claim for punitive damages, it would nonetheless be denied both because Judge Dale's analysis was correct and because the issue is not properly before this Court given the fact that ALJ Kelley's decision did not address it.

7.  Petitioner Is Not Entitled to Back Pay from the SSA.

Petitioner's brief includes a "Demand for Relief Sought" showing a calculation of $990,000.00, based on $2,500.00 per month for 33 years. Pet'r's Br. 8 (Dkt. 32). Petitioner seeks this sum in addition to the other amounts he seeks. *Id.* He also regards this as an entitlement independent of any amounts he has already been paid, and he wants continuing monthly payments of the amounts to which he is otherwise entitled. *Id.* He states:

> I have submitted evidence of merit. My writing might not be at a high level but the substance that has been shared, has been the truth, and the sum I am asking for is a low ball figure. If you were to lessen this Award, I strongly believe that you are promoting this Administration to keep on taking advantage of disabled people. I have equated $2500.00 a month of 30 years. That is the least amount of today's value of my worth. That is not measuring the grief, abuse, or neglect, as that amount is unmeasurable.

*Id.* at 9. Petitioner offers no other justification for his request of nearly one million dollars.

The Court is sensitive to Petitioner's circumstances. The Court sympathizes with the fact that Petitioner is disabled, that he had a difficult time proving his disability to the SSA, and that he has struggled for over a decade to get answers about the scope of his benefits. Nonetheless, the Court cannot arbitrarily order the SSA to pay the sum Petitioner requests, without some legal justification to do so. Any such order must be anchored to a specific law or regulation to be valid, and the Court knows of no law or regulation permitting the award Petitioner requests. Even if there were, the Court's role is not to make its own decision on the merits of Petitioner's claims but to review the decisions of the ALJ. Additionally, Petitioner appears to conflate merit with entitlement to benefits. Even if he believes strongly, as seems clearly to be the case, that he and his wife and child deserve more benefits than they have been paid, the right to receive such benefits is entirely a matter of Congressional and agency delineation. If, under the statutes and the rules, benefits should be paid, he is entitled to receive such payments. If, under the statutes

and the rules, benefits are not to be paid, then he is not entitled to receive such payments, even if he believes that under his circumstances he deserves to receive such benefits. And, here, as with other claims Petitioner brings, this request was not addressed in ALJ Kelley's decision and so the Court cannot consider it.

8. <u>Any Evidence of an Application Prior to 1990 Is Irrelevant.</u>

Petitioner also challenges ALJ Kelley's dismissal of new evidence he presented that he contends shows that he first filed for disability insurance benefits in 1986. Addendum to Pet'r's Br. 7–8 (Dkt. 32-1). Petitioner alleges that "Social Security has lost all of the records prior to 2000 application." Addendum to Pet'r's Br. 7 (Dkt. 32-1). He believes that this demonstrates at least negligence and perhaps intentional misconduct on the part of the SSA. *Id.* at 7–8. He asserts that "ALJ Kelley . . . failed to address this argument." *Id.* at 8.

ALJ Kelley did not fail to address this argument. After once again noting that an application filed in 1986 could not be reopened under the law, ALJ Kelley analyzed the evidence Petitioner proffered and found it insufficient to prove he had filed an application in 1986. (AR 1376–1378.)

To prevail in his Petition for Review, Petitioner must show that ALJ Kelley's decision in this regard was not based on substantial evidence. He has not done that. He merely recites dates of certain correspondence from 1990 to 1992, arguing that the timing somehow supports his claim that he filed an application in 1986. Addendum to Pet'r's Br. 8 (Dkt. 32-1).

Petitioner offers no argument or explanation on the bigger issue, which is that the law does not allow either the SSA or this Court to reopen an application from 1986 except in narrow circumstances that do not apply here. *See* 20 C.F.R. § 404.988(c). Stated differently, even if Petitioner could prove with absolute certainty that he filed an application in 1986, the result

would be the same: the application could not be reopened because the time period to do so lapsed more than two decades ago. Any evidence that might show Petitioner applied in 1986 is simply irrelevant because of this fact. Accordingly, Petitioner's Petition for Review is denied to the extent it challenges ALJ Kelley's finding he did not file an application in 1986.

    9.  <u>Alleged Typos in ALJ Kelley's Decision Do Not Undermine Its Validity.</u>

Finally, Petitioner also alleges that ALJ Kelley's 22-page decision "has typos of dates and facts," which he later catalogs. Addendum to Pet'r's Br. 1, 10–11 (Dkt. 32-1). The Court need not, and does not, consider these typos because Petitioner has not shown, nor even alleged, that any of them materially affected ALJ Kelley's decision or in any way undermined the accuracy or correctness of the ultimate findings contained therein. No doubt there will be some typographical or scrivener's error in this decision. Despite our best efforts, such things creep into what we otherwise seek to have letter perfect. Such is the nature of human endeavor.

## IV.  **CONCLUSION**

Petitioner's motions seeking additional evidence are denied because this is a closed-record proceeding and because the records would not be relevant to any issue before the Court.

Petitioner has shown that ALJ Kelley's decision is not based on substantial evidence to the extent that it fails to consider whether Petitioner's letter of October 2005 established a protective filing for the subsequent application filed by Petitioner's wife for wife's insurance benefits. Therefore, the Petition for Review is granted on that basis alone. Petitioner has not otherwise shown that ALJ Kelley's decision was in error.

Because the Petition for Review is granted, this matter will be remanded for further administrative proceedings. The Court directs Respondent to expedite the remaining proceedings on this limited issue because of the lengthy period of time that has been consumed as this case

wound its way through the adjudication process below, followed by the much too long a period it has taken for this Court to decide the appeal.

## V.  <u>ORDER</u>

**NOW THEREFORE IT IS HEREBY ORDERED:**

1. Petitioner's Motion for Workers Comp Records or an Index of Workers Comp Records (Dkt. 30) and Motion for Social Security Records and the Triennial Redetermination Ratio Considered Starting 1983 to Present (Dkt. 31) are **DENIED**.

2. Petitioner's Petition for Review (Dkt. 15) is **GRANTED**.

3. This action is **REMANDED** for further proceedings under sentence four of 42 U.S.C. § 405(g) with instructions to the ALJ to issue a new decision after analyzing whether Petitioner's October 2005 letter established a protective filing date for his wife's insurance benefits application.

4. Respondent shall expedite and complete the above review, and issue a written determination, within 6 months of this Memorandum Decision and Order.

5. Respondent shall file a status report with the Court indicating compliance with the Court's order on or before <u>**May 31, 2018**</u>.

DATED:  November 20, 2017

_____
Honorable Ronald E. Bush
Chief U. S. Magistrate Judge